**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **MONTEREY RESEARCH, LLC,** | § | |
| *Plaintiff* | § | |
| | § | **W-21-CV-00542-ADA** |
| **-vs-** | § | |
| | § | |
| **BROADCOM CORPORATION,** | § | |
| *Defendant* | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is Defendant Broadcom Corp.'s ("Defendant" or "Broadcom") Motion to Transfer Venue under 28 U.S.C. § 1404(a) to the Northern District of California. ECF No. 44. Plaintiff Monterey Research, LLC ("Plaintiff" or "Monterey") filed its Response (ECF No. 60), and Broadcom filed its Reply (ECF No. 66). After careful consideration of the parties' briefs and the applicable law, the Court **DENIES** Broadcom's Motion to Transfer to the Northern District of California.

## I.     FACTUAL BACKGROUND

Plaintiff Monterey filed this lawsuit accusing Defendant Broadcom of infringing U.S. Patent Nos. 6,573,753 ("the '753 patent"); 6,979,640 ("the '640 patent"); 7,405,987 ("the '987 patent"); 7,512,873 ("the '873 patent"); 7,895,387 ("the '387 patent"); 8,037,249 ("the '249 patent"); 8,694,776 ("the '776 patent"); and 9,767,303 ("the '303 patent") (collectively, "the Patents-in-Suit"). ECF No. 1 ¶ 3. The '753 patent is "directed to the field of microcontrollers and similar electronic devices, and more particularly to a system and method for controlling the drive strength of an input/output node in a microcontroller." *Id.* ¶ 41. "The '640 patent is directed to interconnection structures, including interlevel interconnection structures, devices containing

these structures, and methods of making these structures and devices." *Id.* ¶ 54. The '987 patent teaches, among other things, "a sense amplifier circuit with at least a sensing stage and an amplifying stage." *Id.* ¶ 69. "The '873 patent describes an exemplary reconfigurable circuit that included processing elements ("PE's"), a configuration memory stored with configuration data that was used to set the types of the operations executed by the PEs, and a network that connected the plurality of PEs and the configuration memory to each other." *Id.* ¶ 81. "The '387 patent is generally directed to devices and methods that provide communication paths between host devices and target devices, and more particularly to devices and methods for communicating between a target device and multiple hosts." *Id.* ¶ 94. "The '249 patent teaches, among other things, a method comprising pinning memory buffers in a managed memory environment using a recursive function call, issuing data transfer requests to a peripheral device, and asynchronously accessing the pinned buffers in response to the requests." *Id.* ¶ 108. The '776 patent teaches "systems, devices, and methods that can facilitate employing a memory component communicatively connected to a host." *Id.* ¶ 121. And last, "[t]he '303 patent is generally directed to memory systems and in particular, to systems and methodologies that can facilitate the utilization of a memory module that can operate in response to instructions and data received from an external processor." *Id.* ¶ 132.

Monterey is an intellectual property and technology licensing company, organized as a limited liability company with offices in New Jersey and California. *Id.* ¶¶ 1, 4. Broadcom is a California corporation with a regular and established place of business in the Western District of Texas. *Id.* ¶ 6; ECF No. 44 at 2. Broadcom's principal place of business is in San Jose, California. ECF No. 44 at 2.

Monterey filed another patent infringement suit against Broadcom on the same date as the instant suit. *See Monterey Research, LLC v. Broadcom Corp.*, No. 6:21-cv-541-ADA (W.D. Tex. May 28, 2021) ("*Broadcom 541*"). The *Broadcom 541* case is also subject to a motion to transfer venue. Relative to the instant case ("*Broadcom 542*"), Monterey filed suit against AMD and Qualcomm, asserting a patent common to *Broadcom 542*, namely the '640 patent. *See Broadcom 542*, ECF No. 1; *Monterey Research, LLC v. Advanced Micro Devices, Inc.*, No. 6:21-cv-839-ADA, ECF No. 1 (W.D. Tex. Aug. 12, 2021) ("*AMD 839*"); *Monterey Research, LLC v. Qualcomm Inc., et al.*, No. 6:21-cv-936-ADA, ECF No. 1 (W.D. Tex. Sept. 10, 2021) ("*Qualcomm*"). Additionally, this case involves the same three patents asserted against Qualcomm, including the '987 patent, the '776 patent, and the '303 patent. *See Broadcom 542*, ECF No. 1; *Qualcomm*, ECF No. 1. *AMD 839* is subject to a motion to transfer venue, while the Qualcomm case is not. Accordingly, though named in the Court's analysis to provide fulsome context, the Court does not consider the *AMD 839* case when exercising discretion to analyze public and private interest factors.

## II.     LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action "might have been brought" in the transfer destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *Volkswagen II*, 545 F.3d at 314. The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 314–15. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the

forum in which the case was filed. *Id.* While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

## III.    DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the Northern District of California ("NDCA"). Broadcom asserts that this case could have been brought in the NDCA because Broadcom has its principal place of business in San Jose. ECF No. 44 at 6. Monterey does not dispute this point. *See generally*, ECF No. 60. This Court finds that venue would have been proper in the NDCA had Monterey originally filed this case there. Thus, the Court proceeds with its analysis of the private and public interest factors to determine if the NDCA is clearly more convenient than the Western District of Texas ("WDTX").

### A.  The Private Interest Factors

#### i.    *The Relative Ease of Access to Sources of Proof*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are

kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d 1388, 1345 (Fed. Cir. 2009)).

Broadcom states that this factor favors transfer because the relevant files and other physical evidence regarding the accused products "are only accessible at Broadcom's San Jose facilities in the NDCA or otherwise stored in data centers on the west coast." ECF No. 44 at 7–8. Furthermore, given Monterey's prior representations, any access to Broadcom's source code and Graphic Data System files are "highly confidential" and "will be limited to in-person inspection at or near Broadcom's San Jose facilities in the NDCA." *Id.* at 8; ECF No. 44-20 ¶ 11. Last, non-party subsidiary Avago Technologies U.S. Inc. ("Avago") stores its documents regarding its sales on servers at its San Jose facility. ECF No. 44 at 4; ECF No. 44-20 ¶ 12.

Monterey argues that the very declaration Broadcom cites to actually states that Broadcom's "proprietary source code and GDS files [are] in multiple data centers in Nevada, as well as [*sic*] single data center in Virginia." ECF No. 44-20 ¶ 11; ECF No. 60 at 6–7. Indeed, "Broadcom does not refer to where Broadcom stores its source code and GDS files—Nevada and Virginia—but rather where Broadcom unilaterally intends to provide source code and GDS files to Monterey during discovery in this case." ECF No. 60 at 7 (emphasis omitted). And, if this Court were to lend credence to such a statement, parties could "manufacture venue by limiting the place of discovery to a preferred venue." *Id.*

Monterey has the better of this argument. First, parties cannot manufacture venue with discovery ultimatums. The Court is sensitive to the confidential nature of source code, but that does not always require access or review at one particular location. In fact, it is all too often a debated issue when establishing governing protective orders. But, given the location of

Broadcom's data centers, as addressed in more detail below, the Court is unwilling to find that Broadcom's ultimatum requires this factor favor transfer.

Second, general allegations unsupported by specific evidence do not tip the scales in a transfer analysis. Broadcom states that most of its accused products were researched, designed, and developed in the NDCA. ECF No. 66 at 4. To support that proposition, Broadcom attached an Appendix that lists the Asserted Patents, the Accused Products, the Responsible Business Unit, the employees in California or Texas, the Location(s) of Primary R&D Work, the Location(s) of Most Knowledge Witness(es) in view of PICs, and the Location of BU Lead. ECF No. 66-1. However, none of these columns adequately indicate the *sources of proof*, especially in light of Broadcom's other contentions. *See* ECF No. 44-20 ¶ 3. For example, Broadcom cites to the declaration of Mr. Ryan Phillips, wherein he states the "vast majority of those witnesses" would be located in California. But later declarations indicate that not every California reference is relevant to the NDCA. *See id.* ¶ 4 ("In contrast, the same division has more than 220 R&D employees in California, including more than 90 in San Jose."). Later, in the same paragraph, Mr. Phillips states that "most of products Plaintiff accuses of infringement in this case were designed primarily in California, and most of the technological research related to the products was done in California." But nothing in the declaration cites to any specific documents or sources of proof. And, in Mr. Phillips's deposition, it became clear little was done to support such an allegation. *See* ECF No. 60-3, 262:25-263:4 ("Q. As part of your investigation, did you do anything to investigate where documents relating to the accused products may be located? A. No, not really.").

Third, Broadcom dedicates a portion of its briefing under this factor to address the "controlling Fifth Circuit law" that relevant access is the "access to the 'actual physical location

of servers containing electronic documents,' not simply electronic access to such servers from remote locations." ECF No. 44 at 7 (citing *Bluebonnet Internet Media Servs., LLC v. Pandora Media, LLC*, No. 6-20-CV-00731-ADA, 2021 WL 3134262, at *3 (W.D. Tex. July 22, 2021). And in Broadcom's reply, it states that its "design files are stored in data centers in nearby Nevada (as well as Virginia)." ECF No. 66 at 4; *see also* ECF No. 44-20 ¶ 6 ("Broadcom Corp. stores its proprietary source code and GDS files in multiple data centers in Nevada, as well as [*sic*] single data center in Virginia."). Indeed, "[n]o such files are stored in or near Texas." *Id.* But in rebutting any relevance to Texas, Broadcom defeats its own argument regarding the sources of proof in the NDCA. "The relevant 'access' is the relative ease of access to the *actual physical location* of servers containing the electronic documents." *Id.* (emphasis in original). A general allegation that products were researched, designed, and developed in the NDCA is not sufficient. Particularly when, after discovery, it becomes clear the data centers hosting such design files are actually located in Nevada and Virginia. *See also* ECF No. 60-3, 257:18-25 ("Q. so the data centers that store Broadcom's source code are located in Virginia and Nevada; is that right? A. That's correct. Q. And the data centers that store Broadcom's semiconductor design files are located in Virginia and Nevada; is that right? A. That's correct."). In the end, "[w]hat matters is the relative access to sources of evidence in the two competing forums." *Juniper*, 14 F.4th at 1321; *see also id.* ("[T]hat some evidence is stored in places other than either the transferor or the transferee forum does not weigh against transfer.").

The most relevant documents are stored on servers in Nevada and Virginia. However, non-party Avago maintains its sales documents on its servers in the NDCA. In weighing the sources of proof relevant to this case, the Court finds that this factor weighs slightly in favor of transfer to the NDCA.

### ii.    The Availability of Compulsory Process to Secure the Attendance of Witnesses

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, No. 6:18-cv-00372, 2019 WL 4743678 at *14 (citing *Volkswagen II*, 545 F.3d at 316); *see also In re Juniper*, 14 F.4th 1313, 1316 (Fed. Cir. 2021) ("the private factors are . . . (2) the availability of compulsory process to secure the attendance of *non-party witnesses* whose attendance may need to be compelled by court order…") (emphasis added).

Broadcom asserts that "numerous non-party witnesses are located in the NDCA (or elsewhere in California)" and that "no known non-party witnesses are located in the WDTX." ECF No. 44 at 8–9. Such non-party witnesses include the entity responsible for sales of the accused products, named inventors and prior assignees of the asserted patents. *Id.* at 8. First, Broadcom points to Avago, the entity responsible for the sales of the accused products in the United States. *Id.* at 4. Avago is incorporated in Delaware with its principal place of business in San Jose. *Id.* Of its 776 U.S. employees, 503 are based in the NDCA. *Id.* Second, Broadcom further points locations of several named inventors. For the '640 patent, Alain Blosse and Sanjay Thekdi are within the NDCA. *Id.* The '387 patent lists Hamid Khobadandehlou, Syed Babar Raza, and Scott Swindle from the NDCA. Of the remaining inventors for the other Patents-in-Suit, many are believed to be on the west coast. *Id.* Third, Broadcom notes that Monterey acquired each of the asserted patents from Cypress Semiconductor Corp. out of the NDCA. *Id.* at

5. Fourth, many of the accused products for the '753 patent were designed by LSI Corp. ("LSI"), an entity separate from Broadcom with a principal place of business in San Jose, California (the NDCA). *Id.* And, the division that designed the charted accused product, the SAS3108 ROC, has no R&D employees in Texas. *Id.*

Monterey argues that at least three Broadcom distributors of the accused products exist in this District and elsewhere in Texas, including Avnet, Allied Electronics, and Mouser Electronics. ECF No. 60 at 8. Monterey argues that each of the distributors are relevant because they may have "information regarding indirect infringement and damages, including the products' use, sales, marketing, and value." *Id.* Next, Monterey asserts Broadcom customers and partners are within the WDTX. For example, Dell, headquartered in Austin, Texas, uses Broadcom's ethernet controllers accused for the '387 patent and microcontrollers accused for the '776 and '303 patents. *Id.*; ECF Nos. 44-15 at 1; 44-17 at 1; and 44-18 at 1. Monterey further alleges Broadcom "has collaborated on the accused products with AT&T, headquartered in Dallas, Texas." *Id.* Those products include Broadcom's Jericho2 and Jericho2c+, which are accused for the '753, '640, '873, and '249 patents. *Id.* Other customers of a certain ethernet switch include Huawei and ZTE, both located in Texas. ECF Nos. 61-11 at 1, 61-7 at 2 (Huawei); ECF Nos. 61-12 at 1; 61-7 at 2 (ZTE).

Monterey also disputes whether Avago and LSI should be considered as third parties under the compulsory process factor because they are subsidiaries of Broadcom, and nothing indicates a Court order will be necessary to procure its attendance. ECF No. 60 at 9; *see also* ECF No. 60-3, 262:21-24 ("Q. So am I correct that Avago Technologies U.S., Inc. has a corporate relationship with Broadcom Corporation? A. Yes."); ECF No. 60-3, 4:22-23 ("Q. Who is your employer? A. My employer is LSI Corporation."); ECF No. 60-3, 7:7-8 ("Q. Where are

you located right now? A. I'm in my home in Englewood, Colorado."); ECF No. 60-3, 14:11-14 ("During all this time, I remained employed by LSI Corporation, which is a subsidiary of Broadcom, Inc. That's where we stand now.").

In addition, Monterey argues that most inventors are not in California. In fact, the sole inventors for the '987 patent, the '249 patent, the '753 patent, and the '873 patents reside in Colorado, Idaho, Washington, and Japan, respectively. ECF No. 60 at 9. Additionally, inventors for the '776 and '303 patents are in France, and an inventor for the '387 patent is in Washington. *Id.* Thus, of the eight patents, six have no inventors in California. *Id.* And of one of the remaining patents, some inventors are not in California. *Id.*

Regarding the prior assignees, Monterey states that both Cypress Semiconductor and Spansion have been acquired by Infineon Technologies AG, which is headquartered in Munich, Germany. *Id.* Regardless, Infineon Technologies AG "has offices in Texas, including in this District." *Id.* Most importantly, "Broadcom identifies no issue for which Cypress Semiconductor and Spansion . . . have relevance." *Id.*

a. <u>Distributors, Customers, and Partners</u>

Numerous third parties maintain operations within the subpoena power of either the WDTX and the NDCA, and some maintain operations in both. However, some appear to be far more relevant than others. *See* ECF No. 66 at 4 ("None of the ten accused products in this case (*see* Appendix A) has been sold in Texas to any of Avnet, Allied Electronics, AT&T, Dell, Huawei, or ZTE—and there has been only limited sales of a single product to Mouser Electronics in Texas." (citing to ECF Nos. 67-3, 67-4)).

Avago, on the other hand, appears to have relevant information regarding the sales of the accused products in the United States. Monterey argues it should not be treated as a non-party

witness under the compulsory witness factor because it is a subsidiary. It is unclear whether subsidiary companies should be addressed under the compulsory process factor or the willing witness factor. *Compare Network-1 Sec. Sols., Inc. v. D-Link Corp.*, 433 F. Supp. 2d 795, 799 (E.D. Tex. 2006) (analyzing a wholly-owned subsidiary under the compulsory process factor), *with Symbol Techs., Inc. v. Metrologic Instruments, Inc.*, 450 F. Supp. 2d 676, 679 (E.D. Tex. 2006) ("Although Metrologic has not specified why the testimony of an Omniplanar employee may be necessary at trial, as a subsidiary of Metrologic, the Court does not anticipate that the compulsory process will be necessary to compel the attendance of any necessary Omniplanar witnesses."). While Avago witnesses may not require a court order to procure their attendance, the clearer demarcation appears to be between a party and *non*-party witness.[1] *See Volkswagen II*, 545 F.3d at 316 (analyzing "the non-party witnesses located in the city where the collision occurred" under the compulsory process factor); *see also In re Dish Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (holding that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor") (citing *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018)). Accordingly, the Court addresses Avago under the compulsory witness factor.

LSI endures the same analytic process. However, Mr. Phillips, who gave testimony as a 30(b)(6) witness, is an LSI employee. But whether LSI should be considered under the compulsory process factor or willing witness factor is of no moment. LSI is involved in only the

---

[1] The Court questions the practicality of incorporating Avago under the compulsory factor, particularly when the paralegal in charge of gathering information for Broadcom's discovery responses is an Avago employee. *See* ECF No. 60-3, 67:5-7 ("Q. Who is Kathy Manke's employer? A. I think it's one of the Avago entities."). However, given the jurisprudence on corporate separateness, the Fifth Circuit's use of the term "non-party" when analyzing the compulsory witness factor, and recent Federal Circuit opinions to presume unwillingness, this Court finds that non-parties should be considered under the compulsory witness factor.

'753 patent. When comparing its relative impact to the entirety of the case, the Court finds that LSI plays a rather insignificant role and should not be given undue weight. Taking all facts together, including that LSI and Avago are based in the NDCA, the Court finds that more of the relevant non-party distributors, customers, and partners reside in the NDCA compared to the WDTX.

b.  <u>Inventors</u>

It is undisputed that five named inventors currently reside in the NDCA. ECF No. 66 at 3. Indeed, most inventors for a heavy majority of the Patents-in-Suit do not reside in California. However, none reside in Texas. The Court finds that the inventors may have relevant testimony and that, at the very least, five reside in the NDCA while none are in Texas.

c.  <u>Prior Assignees</u>

The Court agrees that Broadcom gives no specific reason for why Cypress Semiconductor Corp. or Spansion LLC have relevance. Instead, Broadcom simply states that "Monterey acquired each of the either asserted patents from Cypress Semiconductor Corp." and Cypress Semiconductor Corp. was  also the original assignee of the majority of the asserted patents, as reflected on their face." ECF No. 44 at 5. These statements amount to nothing more than finding a party in a forum convenient to the party's position and highlighting it for the Court. Thus, the Court gives the prior assignees, located in the NDCA, minimal weight.

For the above-mentioned reasons, the Court finds that the NDCA will have greater subpoena power for both depositions and trial. Therefore, this factor weighs in favor of transfer.

iii.  ***The Cost of Attendance and Convenience for Willing Witnesses***

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d at 1342. When analyzing this factor, the Court should consider

all potential material and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 U.S. Dist. LEXIS 152438, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017). "When the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor or inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203). But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" in some cases where witnesses would be required to travel a significant distance no matter where they testify. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). The Federal Circuit has indicated that time away from an individual's home is a more important metric than distance. *Id.*

Broadcom argues that because the principal place of business for both Monterey and Broadcom is the NDCA, most relevant willing witnesses will reside in the transferee forum. ECF No. 44 at 9. Conversely, Broadcom argues that its Austin employees have not been established as necessary to this case, particularly because they do not work on the accused functionalities of the accused products (though they have worked on the accused products). *Id.* at 2; *see also* ECF No. 66 at 1. But to support that transfer is proper, Broadcom cites to Mr. Phillips's declaration and its interrogatory responses that break down the most relevant witnesses by accused product. *See* ECF No. 44-20 ¶¶ 4-10; *see also* ECF No. 60-6 at 9–22. Monterey heavily relies on the proposition that Broadcom's cited declaration from Mr. Phillips is flawed because he lacks the

knowledge necessary to support his assertions. ECF No. 60 at 10–11. Hence, Monterey argues, Mr. Phillips overlooks several relevant witnesses in Austin and his declaration is unreliable. *Id.* at 10.

The Court agrees the manner and method of Broadcom's venue investigation was somewhat circumspect and superficial. As indicated by Monterey in its 30(b)(6) deposition, Mr. Phillips had his paralegal research all the topics, reviewed the information she gathered, and then spoke with outside counsel. But Mr. Phillips did not meaningfully speak with anyone other than his paralegal Ms. Manke or Broadcom's outside counsel regarding the employees identified in his declaration. ECF No. 60-3, 26:24-27:11; 29:3-11; 60:17-61:4; 248:22-249:23. Mr. Phillips also acknowledged he did not personally investigate where the accused products were primarily designed. *Id.*, 278:9-11. Furthermore, very little detail is given regarding Ms. Manke's investigative process. *Id.* 57:3-60:20; 159:8-161:22.

Much of the Court's concern is that the investigative process begins with the proposition that employees involved in the research and design of the accused products are "probably all in California." *Id.*, 159:24-25; *see also id.*, 155:6-24; 76:24-77:6. Realistically, the opening inquiry should be "where are the relevant witnesses located?"; not "are there relevant witnesses located in California?" Indeed, it is telling that Mr. Phillips did little to no research himself, but then added mitigating phrases to reduce the importance of any potential Texas witnesses. *See id.*, 154:25-155:10 ("Q. Okay. Who decided to put the word 'minimally' in your declaration? A. I think I did. I edited this numerous times. Q. Okay. So--. A. I can state categorically, speaking from my own knowledge, that with every single product in the case, any involvement in Texas was minimal. I can just say that. I know that to be true.").

Broadcom argues that Monterey's cited quotes are a form of "blatant quote-cropping." ECF No. 66 at 2. But the Court finds that the reverse is true. Instead, after a thorough reading of the deposition transcript, Monterey's characterizations seem far more accurate than Broadcom's. For example, Broadcom rebuts the idea that Mr. Phillips does not know what is happening in Austin with the following quote:

> Q.   What's your understanding of the range of employees at Broadcom's Austin facility?
>
> A.   I think there's R&D employees, marketing employees. I think probably sales employees probably, I would guess.
>
> Q.   It's your understanding that research and development work takes place at Broadcom's Austin facility?
>
> A.   That's correct.
>
> Q.   It's your understanding that product design work takes place at Broadcom's Austin facility?
>
> A.   Well, I don't know about product design work. I'm not sure.
>
> Q.   You don't know one way or the other?
>
> A.   I think that the facility is much more about verification. There's probably some design work. It's likely.

ECF No. 60-3, 76:6-23 (as cited by Broadcom). But information about what generally happens at the Austin facility has no bearing on the Court's analysis. Here, the Court is concerned with witnesses relevant to the accused products, and it is at that juncture that Mr. Phillips gets called on his two-seven off-suit.

> Q.   What's your understanding of the types of products that have been worked on at Broadcom's Austin facility?
>
> A.   Well, I have very little. Almost all of our products I've worked on in almost every litigation have been done at other facilities, so I don't know exactly what happens in Austin.

*Id.*, 76:24-77:6.

Another example includes Mr. Phillips's adamant statement regarding his "personal knowledge," where he states:

A.    I can state categorically, speaking from my own knowledge, that with every single product in the case, any involvement in Texas was minimal. I can just say that. I know that to be true.

*Id.*, 155:6-10 (as cited by Broadcom). However, a continued reading illustrates Monterey's point, and this Court's concern.

Q.    Okay. You know that from all of your conversations with Texas employees; correct?

A.    I know that from managing litigation involving Broadcom products for ten years, and knowing that in all of those instances, we've never had an important witness in Texas, not once. In fact, I think we've only ever had one witness in Texas, and that witness -- it was a business unit we sold. So I can say that the involvement of Texas employees is minimal, just period, across the board.

Q.    You can see say that even before you conducted your investigation, you could say that?

A.    Absolutely.

*Id.*, 155:11-24. Mr. Phillips outsourced the investigation, gathered facts, and then added in key disclaimers to discredit employees in Austin, Texas and emphasize employees in the NDCA or elsewhere. But he added the disclaimers and emphasis based on prior experience with other cases irrelevant to the claims or facts at hand. The Court does not find Mr. Phillips to be a very credible witness and takes each of his statements with a grain of salt.[2] *See Uniloc 2017 LLC v. Cisco Sys., Inc.*, No. 2:18-CV-00505-JRG, 2019 WL 4451329, at *2 (E.D. Tex. Sept. 16, 2019) ("[T]he Philips Declaration was not based solely on the personal knowledge of the affiant, but instead on 'confirmation with other responsible personnel.' With this language, the Court has no means to assess the reliability of the Philips Declaration. Some unspecified portion of it is clearly

---

[2] The Court also notes that Mr. Phillips is located in Colorado, not California or Texas.

hearsay from unnamed third parties. As noted at the hearing, the Court has no way to know if 99 percent or one percent of the declaration is based on such hearsay from unknown sources. Nor does Cisco disagree with the Court's characterization of the Philips Declaration as such. It simply has nothing else to offer."); *see also CTP Innovations, LLC v. IntegraColor*, No. 2:13-CV-484-JRG-RSP, 2014 WL 12612800, at *2 (E.D. Tex. Sept. 30, 2014) ("The biggest issue, the "cut and paste" nature of the declarations provided with Defendants [*sic*] motion causes the Court some concern . . . For one, the lack of credibility behind certain evidence supporting a motion could (easily) stand alone as a basis for finding that a movant has failed to meet its burden. But more importantly, the Court has an independent interest in enforcing its requirements of candor. It is unclear to the Court what exactly has happened in this case, but what is clear is that there are substantial, unaddressed factual issues that preclude transfer here.").

    a.  <u>'753 patent: The SAS3108 ROC</u>

Monterey charted a single product specific to the '753 patent: the SAS3108. According to Broadcom, the SAS3108 was designed by LSI. Broadcom notes that the division in charge of the R&D has no employees in Texas, but 47 R&D employees in San Jose. ECF No. 44-20 ¶ 4. Nonetheless, Broadcom proposes that an LSI witness with relevant knowledge is located in Colorado and that the head of the division is located in Colorado Springs, Colorado. *Id.* Broadcom's interrogatory responses propose witnesses with relevant knowledge are located in the NDCA, Arizona, and India, including named witnesses such as Kent Oertle and Makeshwar Kothandaraman. However, unlike Mr. Phillips's declaration, the named witnesses are located in Chandler, Arizona, and India, respectively. ECF No. 60-6 at 9.

In addition, based on deposition testimony of Mr. Phillips, the Court also considers a potentially relevant witness in Colorado. *See* ECF No. 60-3, 200:14-21 ("Q. Is it now your

position that there is no LSI Corp. witness with relevant knowledge of the SAS3108 that's located in Colorado? A. No. Q. Okay. So you believe that there still as [*sic*] an LSI Corp. witness with relevant knowledge of the SAS3108 that's located in Colorado. A. That's correct.").[3] Mr. Phillips also provides an indication of how he comes to his "relevant witness" conclusions—"Q. And given the fact that the SAS3108 was primarily researched, designed and developed by the DCSG business unit in Colorado, you would expect that there are several LSI Corp. witnesses with relevant knowledge that are located in Colorado. A. Yes." ECF No. 60-3, 200:22-201:4.[4] The discrepancies among the cited evidence are cause for concern and demand the requisite scrutiny.

Thus, the question is whether the WDTX is more convenient for these out-of-forum employees, or if the WDTX and NDCA are essentially a wash. Chandler, Arizona is almost equidistant between the WDTX and NDCA, though marginally closer to the NDCA. The reverse can be said of Colorado's relative distance between WDTX and NDCA, as it is somewhat closer to the WDTX than the NDCA. Last, travel from India would be almost identical. The Court finds that the distance between India and the WDTX is about 8,276 miles, while it is 7,729 miles to the NDCA from India. Given that each of the purportedly relevant witnesses are located outside of the relevant forums, and each nestled about midway between the WDTX and NDCA, the Court finds that relevant witnesses for the '753 patent are neutral.

---

[3] The Court notes that this exchange, indicating a difference between Mr. Phillips's declaration, Broadcom's interrogatory responses, and Mr. Phillips's deposition testimony is another illustration of the changing tides in answers that demand heavy scrutiny of each provided answer. Initially, Mr. Phillips declared the relevant witness would be in Colorado. One month later, Broadcom's interrogatory responses indicated that relevant witnesses were in California, Arizona, and India (but none in Colorado). Then, one month later, Mr. Phillips (who resides in Colorado) again stated that he believed the relevant witness was in Colorado. ECF No. 60-3, 200:8-201:10.
[4] Mr. Phillips further admits that his declaration did not include California witnesses, while the interrogatory responses did. ECF No. 60-3, 201:5-10 ("Q. Okay. Let me – am I correct that your declaration does not identify any Broadcom Corp. witness with relevant knowledge regarding the design of the SAS3108 that's located in California? A. That's correct.").

Last, for this patent, and each of the following patents, the Court disregards the locations of unnecessarily named heads of divisions. Not once does Broadcom provide a reason for them or articulate any relevant testimony they would provide. A name on an org-chart is rather meaningless  for analysis of a transfer for purposes of venue when nothing more is given. As has been stated repeatedly, the mere location of employees or offices is insufficient to tip the balance of a transfer factor. Without any particular reasoning, such witnesses are discounted or ignored entirely.

### b.  '640 patent: The BCM4360 chip

Monterey charted three products specific to the '640 patent, including the BCM4360, BCM56880, and the BCM56980 chips. ECF No. 44-20, ¶ 5. Broadcom argues that no Texas employees were involved in the research or design of the BCM4360 chip. ECF No. 44-20 ¶ 5. Instead, Broadcom states that Broadcom witnesses with relevant knowledge regarding the design of this chip . . . are located in Irvine, California, including, for example, Dennis Wang." ECF No. 60-6 at 10. Mr. Wang is not located in the NDCA. Monterey also disputes that only one employee for the relevant lives in Texas, and that the employee was not involved in the research or design of the BCM4360 chip. Instead, Monterey points to at least 11 relevant Broadcom engineers in Austin. *See* ECF No. 60 at 12. 104:21-108:8 (naming each of the Austin, Texas employees and confirming they are members of the business unit that researched, developed, and designed some of the accused products).

Mr. Phillips and Broadcom's interrogatory responses appear to be inaccurate regarding the number of witnesses connected to the business unit responsible for the accused product located in Austin. However, the Court has no reason to believe that the witnesses identified in Austin are any more relevant than those located elsewhere. The only information the Court can

rely on is the location of employees that are part of the relevant business unit. But, given that some witnesses present more compelling information than others, general allegations of location and business units do not move the needle. The Court gives weight to Dennis Wang, who is located significantly closer to the NDCA than the WDTX. However, the Court also notes that the witness is only responsible for one accused product of one of the several Patents-in-Suit.

### c.   '640 patent: The BCM56880 and BCM56980 chips

Again, Mr. Phillips declares that only two R&D employees are in Texas, "neither of whom were involved in the research or design of the BCM56880 chip." ECF No. 44-20 ¶ 5. Those Texas employees include Ananth Natarajan and Abbas Dadabhoy. ECF No. 60-6 at 11. According to Broadcom, the "BCM 56880 chip was primarily researched, designed, and developed by the CSG Switch Products business unit of Broadcom Corp. in San Jose, California." *Id.* Broadcom's interrogatory responses propose that Deepak Tyagi is the most relevant witness with knowledge regarding the design of the BCM56880 and BCM56980 chips. *Id.* Mr. Phillips declarations echoes the same, but also adds that Yehuda Avidan has relevant knowledge regarding the design of the chips. ECF No. 44-20 ¶ 5. In addition, Ram Velaga is the head of the CSG Switch Products business unit. *Id.*

Regarding witnesses relevant to the BCM56880 and BCM56980, the Court finds as follows. Yehuda Avidan is not a relevant witness. He was not included in the interrogatory responses and Mr. Phillips, despite including him in his declaration, testified during his deposition that Mr. Avidan's involvement was "not in the area that would be relevant to this case." *See* ECF No. 60-3, 169:6-12 ("Q. And am I correct that in Broadcom's Interrogatory responses, Broadcom no longer identifies Yehuda Avidan as a witness with relevant knowledge

regarding the design of the BCM56880 and BCM56980? A. I'm looking at the 56980, and that is correct. 56880, let me confirm. That's correct."); *see also* ECF No. 44-20 ¶ 5.

Ananth Natarajan is a relevant witness that resides in Texas. Monterey cites to Broadcom's interrogatory response, wherein it states that Ananth Natarajan, a Texas employee, "was involved in the pre-silicon validation and post-silicon validation of the BCM56980 chip." ECF No. 60-6 at 12. Broadcom's argument regarding convenience is absurd: "his involvement occurred outside of Texas; he only recently moved to Texas." *Id.* In other words, Broadcom argues that because Ananth Natarajan only recently moved to Texas, analysis of his convenience should still be rooted in the NDCA.[5] Such a position contradicts the purpose of the willing-witness factor. Additionally, Mr. Phillips qualified Mr. Natarajan's involvement with the phrase "albeit minimally," but without any explanation for why. ECF No. 44-20 ¶ 5; ECF No. 60-3, 156:20-157:13 ("Q. Okay. Did Ananth Natarajan tell Kathy Manke that his work on the BCM56980 was minimal? A. I don't know. Q. Did you ever ask Mr. Natarajan whether his work on the 56980 was minimal? A. No. Q. Is the word "minimal" or "minimally," is that a quote from Ananth Natarajan? A. No. Q. So you're the one that decided to put the word "minimally" in the description of Mr. Natarajan's work on the BCM56980; is that right? A. I either decided or I agreed with it. Q. Can you identify any document describing Ananth Natarajan's work on the BCM56980 as minimal? A. No."). The WDTX is more convenient for Ananth Natarajan because he is a *Texas employee* with relevant knowledge.

Abbas Dadabhoy's involvement with the accused products is vague; Deepak Tyagi's specific involvement is unknown; and no reason is given for why Ram Velaga would be a relevant witness. Instead, Broadcom's interrogatory response and Mr. Phillips's declaration echo

---

[5] Broadcom does not indicate the move occurred post-filing of the complaint. Therefore, the Court presumes Mr. Natarajan lived in Texas at the time of the filing of the complaint.

the same tone: the chips were *primarily* researched, designed, and developed by the CSG Switch Products business unit of Broadcom Corp. in San Jose, California and witnesses with relevant knowledge are located in San Jose, including, for example, Deepak Tyagi. ECF No. 60-6 at 11, 12. While Broadcom argues that it conducted a thorough investigation, *see* ECF No. 66 at 1–2, it fails to explain why Mr. Tyagi is a relevant witness.

Broadcom's purported development of its venue facts rings hollow when it assumes witnesses relevant to the accused products are located in California based primarily on a numbers game. Ananth Natarajan appears to have relevant information, whereas none of the other named witnesses bring testimonial value other than being part of a department where California employees work on the accused products, but Texas employees categorically do not. Abbas Dadabhoy and Deepak Tyagi balance each other out between the transferor and transferee forums for the same reasons. Moreover, this Court does not find Ram Velaga to be a relevant witness other than simply a department head on an org-chart. Therefore, the most relevant witness for consideration is Ananth Natarajan, a Texas witness located within the WDTX.

### d.  '987 patent: The BCM4708 chip

Mr. Phillips states in his declaration that the division of Broadcom "that designed the BCM4708 chip . . . had only a single employee in Texas—and that employee was not involved in the research or design of the BCM4708 chip." ECF No. 44-20 ¶ 6. Instead, based on the investigation, the witness with relevant knowledge is located in Massachusetts. *Id.* Additionally, the BCM4708 chip was primarily researched, designed, and developed in Taiwan. ECF No. 60-6 at 13. Broadcom's proposed witnesses are located in Andover, Massachusetts and include Eric Spada and Scott Winterble. Monterey argues that Todd Trammell, a product manager, and Wei Hou, a Broadcom engineer, are relevant witnesses located in Austin. ECF No. 60 at 12.

The Court does not provide much weight to either Todd Trammell for the same reasons it has declined to assign weight to other division managers, though Mr. Trammell's relevance does appear to be a bit stronger. Instead, the Court focuses its attention on Eric Spada and Scott Winterble from Massachusetts. Neither party seems to dispute their relevance. The real contention lies in whether the WDTX is more convenient for these Massachusetts employees, or if the WDTX and NDCA are essentially a wash. The NDCA is almost twice as far as the WDTX from Andover, Massachusetts. In *Volkswagen I*, the Fifth Circuit stated: "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases *in direct relationship* to the additional *distance to be traveled*." 371 F.3d at 204–05 (emphasis added). In contrast, the Federal Circuit has stated that "the '100-mile' rule should not be rigidly applied" when some witnesses are required to travel regardless of whether the case is transferred. *In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009); *see also In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York); *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021) ("We have been mindful of that rationale for that rule, and we have rejected a rigid[ ] application of the rule when witnesses . . . will be required to travel a significant distance no matter where they testify and when all witnesses would be inconvenienced by having to leave home to attend trial. In light of the purpose underlying the rule, the inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time.") (internal citation and quotation marks omitted).[6] Under this Court's

---

[6] While applying the rationale in this factor, the Federal Circuit has ignored the practicalities of electronic discovery in favor of rigidly applying the sources of proof factor. *See In re: NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *4 (Fed. Cir. Oct. 13, 2021) ("While electronic storage makes documents more widely accessible than was true in the past, the fact that documents can often be accessed remotely does not render the sources-of-proof

understanding of Fifth Circuit precedent, witnesses relevant to the BCM4708 chip would be nearly twice as inconvenienced were this case transferred to the NDCA. But, as it stands under Federal Circuit guidance, any witness beyond 100-miles of the WDTX (or virtually anyone that must stay in a hotel or take a flight), suffers the same inconvenience regardless. Such a "non-rigid" approach writes the "beyond 100-miles" rule out of existence entirely. Therefore, in an effort to strike a balance between Fifth Circuit precedent and Federal Circuit guidance, the Court finds that the Massachusetts witnesses weigh only slightly against transfer, despite having to travel nearly twice the distance.[7]

     e.   <u>'873 and '249 patents: The BCM88280, BCM88480, BCM88690, and BCM88800 chips</u>

Mr. Phillips declares that only two R&D employees are in Texas, compared to 340 in San Jose. ECF No. 44-20 ¶ 7, 9. Mr. Phillips also states that an unnamed witness with relevant knowledge is located in Israel. Broadcom's interrogatories provide additional detail. For each of the accused products, Broadcom alleges that two witnesses in Israel have relevant knowledge: Israel Meilik and Golan Schzukin. ECF No. 60-6 at 15–17. Broadcom also argues that the chips were "primarily researched, designed, and developed by the CSG Switch Products business unit of Broadcom Corp. in in [*sic*] San Jose, California as well as by employees of one or more foreign corporate affiliates of Broadcom Corp. in Israel." The Court finds that travel from Israel to either the WDTX or NDCA is virtually identical (noting that it is slightly farther to the NDCA). Furthermore, despite Broadcom's note regarding research, design, and development in the NDCA, the Court gives no weight to witnesses in the NDCA. No NDCA-located witnesses

---

factor irrelevant." (citing *Volkswagen II*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous."; referring to evidence and sources of proof in a design defect case that allegedly led to injuries suffered in a car wreck))); *see also In re Juniper Networks, Inc.*, No. 2021-156, 2021 WL 4519889, at *3 (Fed. Cir. Oct. 4, 2021) ("While electronic storage makes documents more widely accessible, this factor remains relevant.").

[7] Under this Court's understanding of Fifth Circuit precedent, such witnesses would weigh against transfer (not slightly).

are named; the statement references the NDCA *and* the corporate affiliate in Israel; and the proposed witnesses with relevant knowledge are only found in Israel. The Court finds that this factor is neutral.

### f.   '387 patent: The BCM5718 chip

Mr. Phillips states that no Texas employees are not involved in the research or design of the BCM5718 chip. ECF No. 44-20 ¶ 8. Instead, Mr. Phillips proposes that "a Broadcom Corp. witness with relevant knowledge regarding the design of this chip . . . Laurent Hendrichs, is located in Irvine, California." *Id.* But in Mr. Phillips's deposition, he reversed course. *See* ECF No. 60-3, 243:16-21 ("Q. We're talking about Laurent Hendrichs with respect to the BCM5718. A. It looks like we've identified somebody else, and we did more investigation regarding BCM5718 in the Interrogatories. That person is Hemal Shah."). Indeed, Broadcom's interrogatory response now states that Hemal Shah, also of Irvine, California, is a witness with relevant knowledge regarding the BCM5718 chip. Noting that both proposed witnesses are from the same location, the Court accepts Broadcom's proposed witness location and finds that the NDCA would be more convenient. However, the Court again notes that changing tides and gives this witness its due weight given this is one chip of a single patent among the numerous Patents-in-Suit.

### g.   '776 and '303 patents: The BCM58201 and BCM58202 chips

For the last patents, Mr. Phillips states that the relevant business division has no R&D employees in Texas. ECF No. 44-20 ¶ 10. In contrast, five employees of that division are located in San Jose, California. *Id.* Broadcom proposes Fong Peng as a witness with relevant knowledge who is located in San Jose, California. *Id.* Broadcom's interrogatories reinforce the same name and add Sreenadh Kareti. *See* ECF No. 60-6 at 20–21. Monterey again argues that two witnesses are relevant, including Broadcom's Austin-based product manager, Todd Trammell, and Wei

Hou, an Austin-based Broadcom engineer. For the same reasons previously articulated, the Court gives little to no weight to Monterey's proposed witnesses that reside in Austin. Instead, the Court finds that witnesses with relevant knowledge are likely located in the NDCA.

### h.   Monterey's Proposed Witnesses

Monterey also proposes two witnesses with relevant knowledge regarding Monterey's licensing activities: Joseph Villella and Richard Misiag. ECF No. 60 at 9. "Mr. Villella is the Senior Vice President of Licensing for Monterey's parent, IPValue Management, Inc.; the Chief Licensing Officer for Monterey affiliate, Longitude Licensing Ltd.; and involved in negotiating and approving Monterey's licenses." *Id.* at 9–10. He resides and works in Austin, Texas. *Id.* at 10. "Mr. Misiag is the Vice President of Licensing for IPValue Management and is involved in asserting Monterey patents—including against Broadcom—and negotiating licenses." *Id.* He resides in Oklahoma.

Broadcom responds that Mr. Villella is an employee of a different entity and that Monterey lacks supporting evidence to corroborate its claim. ECF No. 66 at 3; *but see* ECF Nos. 60-29 (Mr. Villella's bio); 60-30 (Mr. Villella's LinkedIn profile); 60-31 (Mr. Misiag's bio); 60-32 (Mr. Misiag's LinkedIn); 60-33 (mapping the distance between Tulsa, OK and Austin, TX—452 miles); 60-34 (mapping the distance between Tulsa, OK and San Jose, California—1,692 miles). Instead, Broadcom argues that Keith Wilson leads Monterey's licensing efforts with Broadcom. Mr. Wilson lives in the NDCA. *Id.*; *see also* ECF No. 66-5.

Because Monterey proposes these witnesses under the willing witness factor, the Court presumes the witnesses are willing. An analysis of each of the witnesses indicates that they are all likely relevant. For example, Mr. Wilson appears relevant having submitted notice letters to Broadcom in 2018 (ECF No. 66-6), 2019 (ECF No. 66-7), and 2021 (ECF No. 65-8). However, the contents of those letters indicate that Mr. Villella likely is relevant, and Mr. Misiag is

certainly relevant. Each of the notice letters state, "Monterey has appointed IPValue Management, Inc." as its agent to commercialize Monterey's patents and other intellectual property rights worldwide." ECF Nos. 66-6; 66-7; and 65-8. As the Senior Vice President of Licensing for IPValue Management, Inc., Mr. Villella is likely involved in the negotiation and approval of Monterey's licenses, as alleged by Monterey. *See* ECF No. 60 at 10. Thus, Mr. Villella likely has a significant role even without directly interfacing with Broadcom. Mr. Misiag appears to be even more relevant given the language in the recent notice letters since Mr. Misiag joined IPValue Management. In 2018, Mr. Wilson asked Broadcom to respond to him to discuss licensing. ECF No. 66-6. In the 2019 and 2021 letters, Mr. Wilson asks Broadcom to "reach out to Mr. Richard Misiag of IPValue to propose dates to meet," followed by Mr. Misiag's contact information. ECF Nos. 66-7 and 66-8. It appears Mr. Wilson plays a limited role of notifying and introducing, but the true heavy lifting in the licensing negotiations and approval indeed occurs with Mr. Misiag, and likely by Mr. Villella of IPValue Management. Accordingly, the Court weighs Mr. Villella and Mr. Wilson as equally relevant to the case as witnesses. One is in the NDCA, while the other is here in the WDTX. Thus, they cancel each other out. Mr. Misiag remains and is located in Oklahoma. As cited by Monterey, San Jose is nearly three times as far as Austin from Tulsa, Oklahoma where Mr. Misiag lives. And, as previously discussed, the Court believes that such a drastic difference in travel should lead to an equally drastic calculation of inconvenience under the "100-mile" rule. However, in an effort to balance Fifth Circuit precedent and Federal Circuit guidance, the Court holds that such a witness would weigh slightly against transfer.

In short, the Court finds that witnesses with relevant knowledge are as follows: for the '753 patent—neutral; for the '640 patent—one accused product favors transfer and two accused

products disfavor transfer; for the '987 patent—slightly disfavor transfer; for the '873 and 249 patents—neutral; for the '387 patent—favors transfer; and for the '776 and '303 patents—favors transfer. Therefore, taking all proposed witnesses into account for the relevant patents and 12 accused products (charted), five products are neutral, four favor transfer, and three disfavor transfer. Last, Monterey's proposed witnesses relevant to licensing weigh slightly against transfer.

In total, the Court finds that this factor is neutral. Most witnesses will come from outside of either district, and those from within each of the respective districts ultimately neutralize one another.

### iv.    All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . . pertaining to the same underlying technology and accusing similar services, . . . the Federal Circuit cannot say the trial court clearly abuses its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d at 1346 n.3.

Broadcom argues that Monterey's prosecution strategy favors transfer. Initially, Monterey filed suit against Broadcom Inc., but voluntarily dismissed its claims against Broadcom Inc. due to improper venue issues. ECF No. 44 at 11. Even though the improper venue issue as to Broadcom Inc. is moot, Broadcom argues that another issue remains—Broadcom does

not sell or offer for sale the accused products in the United States. *Id.* at 11. Instead, Avago is responsible for such sales. Avago is incorporated in Delaware with a principal place of business in San Jose, California. *Id.* at 12. Notably, Avago does not have a regular and established place of business in the WDTX, and venue would be improper here. *Id.* Therefore, Broadcom argues, "a significant possibility exists that Monterey will necessarily have to initiate a separate action against [Avago] in a different venue (*e.g.*, the NDCA)." *Id.* Broadcom proposes that this case be transferred to NDCA wherein Avago could properly be added as a party to avoid discovery and court inefficiencies should Monterey sue Avago elsewhere. *Id.*

Monterey largely ignores Broadcom's arguments within this factor, instead pointing to parallel litigation pending in this district. ECF No. 60 at 14. Specifically, Monterey points to *Broadcom 541*, *Broadcom 542*, *AMD 839*,[8] and *Qualcomm*. *Id.*

Monterey's proposition is correct: co-pending or parallel litigation concerning *the same patent at issue* can result in this factor weighing strongly against transfer. *See EcoFactor, Inc. v. Vivint, Inc.*, No. 6:20-cv-00080-ADA, 2021 WL 1535414, at *6 (W.D. Tex. Apr. 16, 2021). The patents at issue in this case are common to two other cases in this District—*AMD 839*[9] and *Qualcomm*. Broadcom cites *In re NetScout Systems, Inc.* to counter and reinforce that the co-pendency of related cases does not automatically tip the balance in the non-movant's favor. No. 2021-173, 2021 WL 4771756, at *5 (Fed. Cir. Oct. 13, 2021) ("[the Federal Circuit has] rejected as a general proposition that the mere co-pendency of infringement suits in a particular district automatically tips the balance in the non-movant's favor").  In analyzing this factor, the Federal Circuit did not negate judicial efficiencies gained due to co-pending litigation. Instead, it argued that when the overlap is minimal, "the incremental gains in keeping the[] cases in the Western

---

[8] The Court notes that a motion to transfer venue is outstanding in the *AMD 839* case. No motion to transfer venue is outstanding in the *Qualcomm* case.
[9] For the sake of clarity, the Court again notes that *AMD 839* is currently subject to a motion to transfer venue.

District of Texas simply are not sufficient to justify overriding the inconvenience to the parties and witnesses." In other words, this factor alone cannot justify denial of transfer when other convenience factors require transfer. In the case at hand, judicial efficiency will be achieved because the same patents overlap with several other cases, including *AMD 839*,[10] and *Qualcomm*. And while different products and defendants may be involved, "judicial economy considerations in having one trial judge handle lawsuits involving the same patents and technology do favor the [WDTX]." *In re Atlassian Corp. PLC*, No. 2021-177, 2021 WL 5292268, at *4 (Fed. Cir. Nov. 15, 2021) (further distinguishing its holding in *NetScout* that discounted co-pending lawsuits involving the same patents but different defendants and different accused products). The judicial economy considerations here dictate against transfer.

Next, Broadcom argues that Avago, or Broadcom Inc., would likely be added as parties if this case were transferred to the NDCA. Broadcom quotes language from an opinion from this Court (*see* ECF No. 44 at 12), stating "the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *Express Mobile, Inc. v. Atlassian Corp. PLC*, No. 6-20-CV-00805-ADA, 2021 WL 3355375, at *8 (W.D. Tex. Aug. 2, 2021), *vacated*, No. 2021-177, 2021 WL 5292268, at *4 (Fed. Cir. Nov. 15, 2021). However, Broadcom eliminates the remainder of the quote so that it only reflects its position and instead states "will weigh heavily in favor . . . [of] transfer." ECC No. 44 at 12. But Broadcom is wrong about which Court's resolution of this factor will improve judicial efficiencies. No other case against Avago is filed here, nor in another court. And while Broadcom's prediction regarding the addition of parties upon transfer *could* be the case, it is too speculative to impact analysis of this factor. Surely, if the case were transferred, each party

---

[10] The Court notes that the *AMD 839* case has an outstanding motion to transfer venue. Accordingly, the Court gives the *AMD 839* case no weight in deciding the balance of this factor. *See In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017). The Court's efficiency analysis is restricted to only *Qualcomm*.

would re-assess its strategies. But the Court is not convinced that Avago would necessarily be added as a party. Moreover, any non-party discovery involved in this case likely would not be inefficient or burdensome given the corporate relationship between Avago and Broadcom. *See* ECF 60-7. Hence, the Court finds that this factor is disfavors transfer.

## B. The Public Interest Factors

### i. *Administrative Difficulties Flowing from Court Congestion*

This factor considers "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d at 1347. But, in light of recent jurisprudence, speed to trial is subject to several speculative calculations. Indeed, this factor is predictive and speculative. To make such a prediction, courts must now engage in an obscure algorithmic process accounting for cases per judgeship and a comparison of pending cases between the forums, without accounting for a court's scheduling order. *See In re Juniper Networks, Inc.*, No. 2021-156, 2021 U.S. App. LEXIS 29812, at *8 (Fed. Cir. Oct. 4, 2021) (the "proper" analysis "looks to the number of cases per judgeship and the actual average time to trial"). Oddly, even if more cases exist in a transferee forum, it does not necessarily mean that the transferor forum will bring the case to trial faster— despite the transferor forum's faster trial setting. *See In re Apple Inc.*, 979 F.3d at 1344 (indicating that a transferee forum having more pending cases than the transferor forum "is, without more, too tenuously related to any differences in speed by which [the] districts can bring cases to trial."). Moreover, despite this Court's ability to hold trials largely in line with the default scheduling order, such a factor should be given little to no predictive weight. *See In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2469 (2021) ("Nothing about the court's general ability to set a schedule directly speaks to that issue.").

Broadcom "respectfully submits that the NDCA is no more congested than this Court." ECF No. 44 at 12 (citing *In re Juniper Networks*, 2021 WL 4343309, at *6 ("We have noted that the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics.")). Conversely, Broadcom argues that even if this Court would get to trial faster, this factor should be given little weight as "Monterey does not sell any products." *Id.* at 13.

Monterey argues that Broadcom "offers no evidence showing that the case will be tried faster in the NDCA than in this District." ECF No. 60 at 14. In contrast, Monterey shows that the from 2016-2020, the median time to trial for this court is 1.93 years, while that of the NDCA is 4.88 years. *Id.* at 14–15; ECF No. 61-39.

This Court is unaware of the parameters used in *Juniper* to find "no significant differences in caseload or time-to-trial statistics." *In re Juniper Networks*, 14 F.4th 1313, 1322 (Fed. Cir. 2021). However, based on the evidence provided in the instant case by Monterey, and this Court's recent trials, the Court finds that an appreciable difference in docket congestion, cases per judgeship, and estimated time-to-trial exists. Moreover, Monterey's provided time-to-trial evidence is well-supported by this Court's proven track record to expeditiously resolve patent cases before it. *See, e.g., MV3 Partners v. Roku,* 6-18-CV-00308 (W.D. Tex., filed Oct. 16, 2018) (23.7 months from case filing to trial); *VLSI Technology LLC v. Intel Corporation*, No. 6-21-CV-00057 (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *CloudofChange v. NCR Corp., LLC*, No. 6-19-CV000513, 2020 WL 6439178 (W.D. Tex., filed Aug. 30, 2019) (20.3 months from case filing to trial); *Freshub, Inc. et al v. Amazon.Com Inc. et al*, No. 6-21-CV-00511 (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc*. No. 6-19-CV-00044 (W.D. Tex., filed Feb. 8, 2019) (25.9

months from case filing to trial); *Profectus v. Google LLC*, No. 6-20-CV-00101 (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial); *Jiaxing Super Lighting v. CH Lighting Tech.*, No. 6-20-cv-00018 (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *VideoShare v. Google LLC*, No. 6-19-CV-663 (W.D. Tex., filed Nov. 15, 2019) (23.8 months from case filing to trial); *NCS Multistage v. Nine Energy*, No. 6-20-cv-277 (W.D. Tex., filed Mar. 24, 2020) (21.8 months from case filing to trial); *EcoFactor, Inc. v. Google LLC*, No. 6-20-cv-00075 (W.D. Tex., filed Jan. 31, 2020) (24 months from case filing to trial).

Despite Broadcom's indication otherwise, rapid disposition of this case is important given the Federal Circuit's longstanding sentiment that "[r]ecognition must be given to the strong public policy favoring expeditious resolution of litigation." *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989). The Federal Circuit has even acknowledged Congress's interest in the "quick" resolution of patent disputes. *See, e.g.*, *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016).   Broadcom's reply brief nearly concedes this factor. In response to Monterey, Broadcom simply argues that it "need not demonstrate that the case will be tried faster in the NDCA than in this District to justify transfer. Rather, when numerous other factors weigh in favor of transfer the speed of the transferee district court is of little to no weight." ECF No. 66 at 5 (internal citations and quotation marks omitted). Monterey's evidence illustrates the clear disparity in the time-to-trial statistics to show that this factor disfavors transfer.

### ii.    *Local Interest in Having Localized Interests Decided at Home*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction." *In re Samsung Elecs. Co.*, Nos. 2021-139, 2021-140, 2021 U.S. App. LEXIS 19522, at *20 (Fed. Cir. June 30, 2021). "A local interest is demonstrated by a relevant factual connection

between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). But courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *See In re Juniper Networks, Inc.*, 14 F.4th at 1320.

Broadcom is at home in the NDCA, where over a thousand employees reside. ECF No. 44 at 13–14. Broadcom similarly argues that the majority of the products accused by Monterey were researched and designed primarily in California. *Id.* at 14. By contrast, Broadcom argues that "the WDTX has virtually no local interest to this case because Broadcom's relatively few Texas-based employees are largely irrelevant to this matter." *Id.*

In response, Monterey argues that "Broadcom fails to identify any concrete connection between the NDCA and the events that gave rise to this suit." ECF No. 60 at 15. Monterey highlights that Broadcom has an office in this District that houses over 75 employees. *Id.*

35

Monterey further quotes a Broadcom brief from a prior case wherein Broadcom states that Austin—in the WDTX—has a local interest because "Broadcom maintain[s] offices and employees in Austin." *See Innovative Foundry Techs. LLC v. Semiconductor Mfg. Int'l Corp., et al.*, No. 6:19-cv-00719-ADA, ECF No. 62 at 10 (W.D. Tex. Apr. 22, 2020).

Broadcom's reply argues that its statements in *Innovative Foundry* involved different patents and different accused products wherein the Austin Division had a relatively more local interest than Waco. ECF No. 66 at 5. Accordingly, those statements should carry no weight in this case. Furthermore, Broadcom points to its motion wherein it stated "that 'most' of the accused products 'were researched, designed, and developed' in the NDCA."

Both forums have a local interest. Broadcom's declarant, Mr. Phillips, states that based on his "internal investigation of this case to date, most of the products Plaintiff accuses of infringement in this case were designed primarily in California, and most of the technological research related to the products was done in California." ECF No. 44-20 ¶ 3. Mr. Phillips further declares that "[m]y understanding is consistent with, and confirmed by the fact that, more than 80% of Broadcom Corp.'s R&D employees are based in California." *Id.* The NDCA appears to have a local interest. The WDTX similarly has a local interest. Broadcom's office in Austin employs 75 individuals assigned to work on the accused products via their business unit designations. ECF No. 60 at 15; ECF No. 60-4. Mr. Phillips similarly admits that certain R&D employees related to the accused products work in this District, though such language is modified with phrases such as "few, if any" or "albeit minimally." ECF No. 44-20 ¶¶ 3, 5.

Given the statements made in declarations and depositions, there is no doubt that employees involved in the research and design of the accused products come from both the WDTX and NDCA offices. Therefore, this factor requires a weighing of the evidence to

determine which forum has a greater local interest. It is in such an analysis that the credibility of Mr. Phillips's declaration comes under heavy scrutiny. In particular, Mr. Phillips characterizes the known WDTX employees as "few" or small in comparison to the quantity of employees in the NDCA. To emphasize this point, Broadcom's briefing highlights a quantifiable discrepancy in the number of Broadcom employees located in the NDCA, more than 1,400, compared to 90 in the WDTX. But again, "[t]his factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue and *the events that gave rise to a suit*." *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020) (internal quotation marks omitted).

Mr. Phillips's declaration is carefully worded, and his deposition underscores why. For example, Mr. Phillips states that "most of the products Plaintiff accuses of infringement in this case were designed primarily in California, and most of the technological research related to the products was done in California." ECF No. 44-20 ¶ 3. But these generalizations do not clarify whether the California reference is restricted to the NDCA, or California at large. The declaration later acknowledges the difference in California versus NDCA employees for each product, validating concerns as to the credibility of such generalized statements that did not narrow the quantified employees by the relevant district. The Court does not give this statement much weight other than to emphasize that Broadcom's offices in California employ more individuals than can be found in the WDTX. But again, those facts are not conducive to the local interest factor without more.

Mr. Phillips's declaration and Broadcom's interrogatory responses break down the research and design by accused product for each of the patents. Having addressed all of the proposed witnesses, the Court need not rehash its prior conclusions. But at a high level, the Court

provides the following reminders relevant to the local interest factor. For the '753 patent, the accused product was primarily researched, designed, and developed in Colorado. For the '640 patent, employees from the WDTX and NDCA were involved in the research, development, or design of the accused products as members of the CSG Switch Products business unit. The accused products for the '987 patent were primarily researched, designed, and developed in Taiwan. The '873 and '249 patents involve infringement contentions targeting accused products researched, developed, and designed by members of the CSG Switch Products business unit, which maintains employees in the WDTX and NDCA. However, Broadcom alleges that none of the WDTX employees of that business unit were actually involved in the design of the accused chips. Furthermore, Broadcom states that the chips were developed by employees of a corporate affiliate in Israel and its proposed witnesses are located in Israel. Broadcom then states that the chip accused of infringing the '387 patent was developed by the DCSG Data Center Solutions business unit. The business unit includes twenty R&D employees in the NDCA and none in Texas. However, Broadcom's interrogatory response then states that it was primarily researched, designed, and developed by the CSG Switch Products business unit—instead of the DCSG Data Center Solutions business unit as would be consistent with the remainder of the interrogatory response. Then, Broadcom's allegedly relevant witness is located in Irvine, California. But the mix-up between the DCSG and CSG business units appears to indicate an accidental copy/paste function relevant to the local interest factor that is largely discrediting. *See CTP Innovations, LLC v. IntegraColor*, No. 2:13-CV-484-JRG-RSP, 2014 WL 12612800, at *2 (E.D. Tex. Sept. 30, 2014) ("The biggest issue, the "cut and paste" nature of the declarations provided with Defendants [*sic*] motion causes the Court some concern . . . For one, the lack of credibility behind certain evidence supporting a motion could (easily) stand alone as a basis for finding that

a movant has failed to meet its burden. But more importantly, the Court has an independent interest in enforcing its requirements of candor. It is unclear to the Court what exactly has happened in this case, but what is clear is that there are substantial, unaddressed factual issues that preclude transfer here."). Last, Broadcom alleges that the accused products for the '776 and '303 patents were primarily researched, designed, and developed in the NDCA.

Despite these more particular declarations for each accused product, the Court remains skeptical given the contradictions between Mr. Phillips's declaration, his deposition, and Broadcom's interrogatory responses. Mr. Phillips acknowledged he did not personally investigate where the accused products were primarily designed. ECF No. 60-3, 278:9-11. Furthermore, very little detail is given regarding the investigative practices of his paralegal. *Id.* 57:3-60:20; 159:8-161:22. As previously discussed, much of the Court's concern centers on the investigative process and its errant starting assumption.

The crux of this factor is to identify where the events forming the basis for infringement occurred. *See In re Juniper Networks, Inc.*, 14 F.4th at 1320. From the Court's review of the interrogatory responses, deposition transcript, briefing, declarations, and other cited evidence, it would appear the local interest in the NDCA is slightly greater than that in the WDTX. No doubt, as admitted by both parties, employees within each of the respective districts worked on the research and design of the accused products. But quite simply, the Court does not find Broadcom's evidence to be very reliable or credible. Still, the magnitude of such work appears to weigh in favor of the NDCA. *See* ECF No. 66-1. This factor slightly favors transfer.

### iii.    *Familiarity of the Forum with the Law That will Govern the Case*

Both parties agree that this factor is neutral. The Court also agrees.

### iv.    *Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

Both parties agree that this factor is neutral. The Court also agrees.

## C. Weighing of the Factors

Having considered the private and public interest factors, Court's conclusions for each factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Slightly favors transfer |
| Availability of compulsory process to secure the attendance of witnesses | Favors transfer |
| Cost of attendance for willing witnesses | Neutral |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Weighs against transfer |
| Administrative difficulties flowing from court congestion | Weighs against transfer |
| Local interest | Slightly favors transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

In view of the foregoing factors, the Court must determine whether Broadcom has carried its burden to show that the NDCA is "clearly more convenient" than the WDTX. Even after weighing the factors individually and independently, the Court is not to simply tally a score to determine whether transfer is proper. *In re Radmax*, 720 F.3d at 290 n.8 ("We do not suggest— nor has this court held-that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting "score," is the proper methodology."). Indeed, the Court does not elevate this standard to "clear and convincing." But when the evidence and

factual determinations end in a "close call," that surely is not enough to dictate transfer under the "clearly more convenient" standard. *See Quest NetTech Corp. v. Apple, Inc.*, 2019 WL 6344267, at \*7 ("a movant must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning") (citing *In re Volkswagen II*, 545 F.3d at 315). Here, taking all factors together and noting the Court's reasoning for each of its factual determinations, the Court concludes that Broadcom has not met its burden to show that transfer to the NDCA is "clearly more convenient."

## IV.    CONCLUSION

Defendant Broadcom Corp.'s Motion to Transfer Venue under 28 U.S.C. § 1404(a) to the Northern District of California (ECF No. 44) is hereby **DENIED.**

SIGNED this 21st day of February, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE